**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ELIZABETH HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-102-JED-FHM** |
| | ) | |
| **PHILLIPS 66 COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is plaintiff Elizabeth Hill's Motion for Partial Summary Judgment and

Brief in Support (Doc. 41) and defendant Phillips 66 Company's Motion for Summary Judgment

and Brief in Support (Doc. 47).

**I.     Background**

Plaintiff alleges claims of employment discrimination based on sex, retaliation, hostile

work environment, and constructive discharge under Title VII of the Civil Rights Act of 1964

("Title VII"), in addition to a claim of constructive discharge in violation of Oklahoma law.

The following facts are undisputed unless otherwise noted.[1]

---

[1] The following facts are taken largely from defendant's Motion for Summary Judgment. (Doc. 47). Instead of responding directly to many of defendant's facts, plaintiff either states that defendant's facts are irrelevant or provides a general "objection" that defendant has mischaracterized the facts. Because plaintiff fails to directly dispute the premises underlying many of defendant's facts, the Court will consider these facts undisputed for the purposes of defendant's Motion. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); LCvR 56.1(c) ("All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.").

Plaintiff began her employment with ConocoPhillips in 2008 in Bartlesville, Oklahoma as a contract specialist for the procurement department.  (Doc. 47 at 1, ¶ 1).  This position required plaintiff to work with other departments within the company on contracts or purchases of telecommunications and information technology products and services.  (*Id.* at 1, ¶ 2).  Plaintiff was on medical leave from October or November 2011 until February 2012.  (*Id.* at 3, ¶ 8).   Brian Hoff ("Hoff") joined the procurement department while plaintiff was on leave and performed job duties similar to those of plaintiff.  (*Id.* at 3, ¶ 9).   When plaintiff returned from leave, she worked at a desk located in a "pod" with five other individuals, including Danielle Eichhorst ("Eichhorst") and Brenda Udunna ("Udunna"), who were both in the procurement department, and Shawn Sullivan ("Sullivan"), who was part of another department.   When Sullivan moved to another building, Hoff began working in plaintiff's pod.  (*Id.* at 3, ¶ 11).

On May 1, 2012, defendant became a standalone company and plaintiff became an employee of defendant.  (*Id.* at 3, ¶ 13).  Plaintiff continued to work in the procurement department in Bartlesville, Oklahoma, in the same pod, with the same individuals. (*Id.*).  Around May 14, 2012, plaintiff emailed Dan Walden ("Walden"), Manager of the Procurement Service Center, requesting a promotion from her current salary grade level of 14 to a salary grade level of 17.  (*Id.* at 3, ¶ 14).  Because Walden did not believe that plaintiff's request was realistic or reasonable, he directed plaintiff to a company guide for procurement department employees which outlined the responsibilities and expectations for various salary grade levels.  (*Id.* at 3, ¶ 15).   On May 16, 2012, Walden received an email from plaintiff reiterating her request and stating: "I look forward to your immediate response to discuss my Promotion regarding the matter today."  (*Id.* at 4, ¶ 17).  Walden believed this email was unprofessional conduct toward a

manager. (*Id.* at 4, ¶ 18). Plaintiff claims that as of July 2012, she had been passed over for several job promotions or placements. (*Id.* at 4, ¶ 19).

Plaintiff alleges that prior to August 22, 2012, Hoff engaged in the following "harassing" conduct toward her: he followed plaintiff through a tunnel, walked behind plaintiff to the parking lot, smiled and smirked at plaintiff, commented on plaintiff's clothing, and made grunting sounds in her presence. (*Id.* at 4, ¶ 22). Plaintiff's evidence suggests that these incidents occurred shortly following her May 14 and 16 exchanges with Walden, around May 21, 22, 23, and 24, 2012. (Doc. 63 at 20; Doc. 63, Ex. A at EH 224).

This litigation was initiated primarily as a result of events following an incident ("the Hoff incident") which occurred on August 22, 2012, that plaintiff maintains she reported to Walden and Walden's manager Felix Braggs ("Braggs") on August 22, 2012, and August 27, 2012, respectively. The parties dispute which incidents plaintiff reported to her supervisors. While the parties agree that plaintiff reported that Hoff, in the presence of plaintiff, Eichhorst, and Udunna, offered to give Eichhorst the name and number of someone who could "take care" of her daughter's boyfriend (*id.* at 5, ¶ 20), defendant denies that plaintiff reported a statement by Hoff to Eichhorst that he wanted to see Eichhorst's sixteen year-old daughter naked. (*Id.* at 5, ¶ 24).[2]

When Walden approached the other employees present during the conversation with Hoff about plaintiff's complaint, none could corroborate plaintiff's allegation. (Doc. 47 at 6, ¶ 25). Moreover, these employees denied that Hoff made *any* statement regarding Eichhorst's daughter at all. (*Id.* at 6, ¶ 28). While Walden states that plaintiff later denied reporting Hoff's comment

---

[2] The record is inconsistent as to whether the statement was that Hoff wanted to see a picture of Eichhorst's daughter naked, or he wanted to see Eichhorst's daughter naked. For the purposes of the Court's analysis, however, the distinction does not matter.

regarding Eichhorst's daughter's boyfriend when he approached her to discuss the issue, plaintiff maintains that Walden never approached her about her report and claims she never denied making the allegation.  (Doc. 47 at 6, ¶ 26; Doc. 63 at 2, ¶ 2).  Walden ultimately concluded that, based upon the lack of corroboration and plaintiff's subsequent denial of her allegation, her complaint regarding Hoff was made in bad faith.  (Doc. 47 at 6, ¶ 27).

Plaintiff testified that after she reported the Hoff incident to Walden and Braggs, the "sexual harassment" stopped.   (*Id.* at 5, ¶ 23).  The parties dispute the precise context of this statement—plaintiff maintains that her use of "sexual harassment" referred only to Hoff's comments regarding Eichhorst's daughter, while defendant argues that plaintiff was referring to Hoff's "sexual harassment" of plaintiff.

In September 2012, plaintiff reported to Walden that a female supervisor, Lynda Beavers ("Beavers") had rudely interrupted her during a meeting and was taking her supervisory role "too seriously."   Walden was unable to corroborate plaintiff's allegations with other employees present at the meeting and ultimately concluded that plaintiff's report regarding Beavers was made in bad faith.  (*Id.* at 6, ¶¶ 29-31).

As part of the company practice in preparation for plaintiff's annual performance review, Walden spoke to individuals who worked with plaintiff.  Walden spoke to Maria Groff ("Groff"), a Phillips 66 attorney, and Mitch Gerth ("Gerth"), Director of Network Services, who both informed Walden that they were not satisfied with plaintiff's contracting skills and thought that her knowledge of telecommunications was limited.  (*Id.* at 7, ¶ 32).  Walden further noted that plaintiff's communication skills needed improvement because she was unclear and provided incomplete and inaccurate information in her verbal and written communications with him. (Doc. 47 at 7, ¶ 33).

On February 5, 2013, plaintiff met with Walden and her supervisor, Jerry Hampton ("Hampton") to discuss her 2012 performance review, and was informed that she received a performance rating of "Below Expectations" for the 2012 year. (*Id.* at 7, ¶ 34). At the meeting, plaintiff was informed that her rating was a result of her unprofessional conduct in requesting a promotion to salary grade level 17, Walden's conclusion that plaintiff had made bad-faith allegations regarding Hoff and Beavers, as well as plaintiff's performance issues. (*Id.*) Plaintiff had received performance review ratings of "Meets Expectations" for 2010 and 2011. (Doc. 41 at 5, ¶¶ 10-11). A performance review rating directly correlates to an employee's year-end merit base bonus and salary adjustment. (Doc. 41 at 4, ¶ 8). Plaintiff's review of "Below Expectations" negatively affected her year-end bonus and salary adjustment. (*Id.* at 4, ¶ 9). Plaintiff maintains that she contributed to over fifty percent of savings for her entire team for the 2012 year. (Doc. 41 at 5, ¶ 12).

Plaintiff contacted Human Resources after receiving her performance review rating. On February 6, 2013, Jay Hawley ("Hawley") Human Resources Business Partner, informed plaintiff that he had spoken with Walden and Braggs and her rating would not be changed. (Doc. 41 at 5, ¶ 15). On March 11, 2013, plaintiff scheduled a meeting with Hampton and Walden to discuss her performance review rating once again. (Doc. 41 at 6, ¶ 17). Plaintiff's performance review rating was never changed. (Doc. 41 at 9, ¶ 38).

On May 22, 2013, plaintiff emailed her supervisor, Jerry Hampton ("Hampton") and copied Senior Human Resources Business Partner Linda Miller ("Miller"), stating that "minor harassment has stepped up" in the procurement department, specifically that an item had disappeared from her desk, her desk had been rearranged, her chair had been repeatedly lowered,

and a blue gel ball had been placed in her drinking cup.  (Doc. 47 at 7, ¶¶ 35-36; Doc. 47, Ex. A, Ex. 39).

On July 15, 2013, plaintiff sent a lengthy email to the Vice President of Human Resources, Chantel Veevaete ("Veevaete"), which contained a summary of her complaints over the previous year, allegations that she was subject to sexual harassment, hostile work environment, and retaliation, and a request to be transferred to another department.  (Doc. 47 at 8, ¶ 37; Doc. 63, Ex. 9).   Defendant's policy at the time was to assign an Employee Relations advisor to investigate such complaints.  (Doc. 47 at 8, ¶ 38).   Tameka Ramsey ("Ramsey") was assigned to investigate plaintiff's allegations.  (*Id.* at 8, ¶ 39).

On August 5, 2013, plaintiff left her job without providing defendant any notice.  At this time, plaintiff was not on probation, had not been demoted, had not suffered a pay reduction, and had not been threatened with disciplinary action or termination.  Defendant attempted to contact plaintiff several times, but did not hear from her. (*Id.* at 8, ¶¶ 41-43).   On August 20, 2013, defendant sent plaintiff a letter terminating her employment with defendant.   (*Id.* at 9, ¶ 44). Plaintiff asserts that she has applied for over sixty (60) jobs since her employment with defendant ended but remains unemployed.  (Doc. 41, Ex. 1, ¶ 16).

On November 25, 2013, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964.  (Doc. 63, Ex. 13). The EEOC declined to pursue plaintiff's charge and provided plaintiff with notice of her right to sue on December 11, 2013.  (Doc. 63, Ex. 14).  Thereafter, plaintiff filed the instant litigation.

The parties filed cross-motions for summary judgment.  In her Motion for Partial Summary Judgment (Doc. 41), plaintiff seeks a liability determination in her favor on her Title

6

VII retaliation claim.  Defendant's Motion for Summary Judgment (Doc. 47) requests that the Court enter judgment against plaintiff on all of her claims.

## II.     Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "A fact is 'material' only if it might affect the outcome of the suit under governing law."  *Anderson*, 477 U.S. at 248.  There is no genuine issue of material fact "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.  The district court thus must determine "whether the evidence presents a sufficient disagreement [about that material fact] to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52. The non-movant's evidence should be taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor.  *Id.* at 255.

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ."  *Id.*  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.

## III.    Plaintiff's Motion for Partial Summary Judgment

In order to bring forth a claim of retaliation under Title VII, a plaintiff must show: "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse—that is, that the action might 'dissuade[ ] a

reasonable worker from making or supporting a charge of discrimination,'; and (3) that a causal connection exists between the protected activity and the materially adverse action. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted)).

If the plaintiff is able to make a prima facie showing, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." The plaintiff must then respond by demonstrating that the defendant's asserted reasons for the adverse employment action are pretextual. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001) (citations omitted).[3]

**A. Prima Facie Case**

An employee's conduct is only protected under § 2000e–3(a) if it is in opposition to a "practice made an unlawful employment practice by [Title VII]." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002). A plaintiff may demonstrate protected opposition by engaging in conduct that ranges from filing "formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *see also Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004) (unpublished) ("a vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected

---

[3] Plaintiff's Reply incorrectly references the burden-shifting framework for a sex discrimination claim in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), instead of the burden-shifting test for a retaliation claim. (*See* Doc. 69 at 1).

activity and will not support a retaliation claim.")[4]; *Petersen*, 301 F.3d at 1188 (employee's failure to specifically mention unlawful discrimination to employer can preclude a retaliation claim "because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed . . . a violation of Title VII").

Title VII permits employees to maintain retaliation claims so long as the plaintiff demonstrates that she "had a reasonable good faith belief that the conduct complained of violated Title VII." *Bd. of Cty. Comm'rs, Fremont Cty., Colorado v. E.E.O.C.*, 405 F.3d 840, 852 (10th Cir. 2005).

Plaintiff asserts that she engaged in protected opposition because she made a good-faith report of an incident of sexual harassment to two of her supervisors.  (Doc. 41 at 13).  More specifically, plaintiff alleges she reported the following two statements by Hoff: (1) that he wanted to see Eichhorst's daughter naked, and (2) that he offered to provide Eichhorst with the name and number of a person who could "take care of her daughter's boyfriend."  (Doc. 41 at 6, ¶ 19).   To be clear, no other individual present during this conversation corroborated plaintiff's claim that Hoff made the comments.  Moreover, Walden testified that plaintiff only reported the latter comment to management.   Thus, the only undisputed fact in support of plaintiff's retaliation claim is her alleged complaint that Hoff offered to provide the contact information of someone who could deal with Eichhorst's daughter's boyfriend.

Viewing the factual record in a light most favorable to defendant, plaintiff cannot show that she had a reasonable good faith belief that Hoff's commentary violated Title VII, because Title VII only protects claims of sexual harassment that are "so 'severe or pervasive' as to 'alter

---

[4] Tenth Circuit Rule 32.1 provides: "Unpublished decisions are not precedential, but may be cited for their persuasive value."  Any unpublished decision cited in this Opinion and Order is so limited.

the conditions of [the victim's] employment and create an abusive working environment.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 S. Ct. 1508, 1509, 149 L. Ed. 2d 509 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998)). Thus, no reasonable person would believe that a single, isolated incident, like the commentary by Hoff giving rise to plaintiff's complaint, constitutes a violation of Title VII. *See id.* ("No reasonable person could have believed that the single incident . . . violated Title VII's standard."); *Gaff v. St. Mary's Reg'l Med. Ctr.*, 506 F. App'x 726, 728-29 (10th Cir. 2012) (unpublished) (stating it was unreasonable for plaintiff to believe that her co-worker's conduct violated Title VII because "Title VII protects against unlawful discrimination, not 'simple teasing, offhand comments, and isolated incidents'" (quoting *Faragher*, 524 U.S. at 788)); *Zimpfer v. Aramark Mgmt. Servs., LP*, 795 F. Supp. 2d 1249, 1253 (D. Utah 2011) (plaintiff's report to his supervisor of an isolated, momentary observation of his coworkers engaged in sexual activity did not constitute a reasonable, good-faith belief of sexual harassment); *Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234, 1242-43 (D. Kan. 2005) (agreeing with defendant that plaintiff "was subjected to one incident and therefore, he did not have a reasonable, good faith belief that he was the victim of sexual harassment"). The law clearly supports the Court's determination that a single incident of alleged sexual harassment—the only basis for plaintiff's retaliation claim—is not enough to rise to the level of a reasonable belief that sexual harassment occurred.

The Court notes that the fact that no other employee corroborated plaintiff's allegations regarding the Hoff incident further counsels against a finding that plaintiff's complaint was based upon her "good faith belief" that Title VII had been violated.

Defendant also argues that plaintiff cannot demonstrate that she engaged in protected opposition because she did not oppose protected activity. The Court finds defendant's argument

persuasive.  While it is true that sexual harassment constitutes an unlawful employment practice under Title VII, plaintiff cannot demonstrate that the undisputed facts show that she engaged in protected opposition to discrimination because her complaint did not mention, nor did it involve a protected activity under Title VII.  *See, e.g.*, *Faragalla v. Douglas Cty. Sch. Dist. RE 1*, 411 F. App'x 140, 148 (10th Cir. 2011) (unpublished) (affirming district court's determination that some of plaintiff's complaints did not constitute protected opposition because the complaints failed to mention the victim's "race, religion, or national origin, or alleged discrimination or harassment on any unlawful basis," nor did plaintiff provide any evidence that her supervisors perceived those complaints as relating to unlawful discrimination); *Anderson*, 122 F. App'x at 916 ("[E]ven if [the plaintiff's] supervisor did retaliate against her for filing a complaint, the complaint was not protected activity under Title VII; consequently, the supervisor's retaliation was not unlawful under Title VII."); *Petersen*, 301 F.3d at 1188 (holding absence of reference to unlawful discrimination can preclude retaliation claim "because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed . . . a violation of Title VII").

Nor is there any evidence that despite plaintiff's failure to mention discrimination on an unlawful basis, that plaintiff's supervisors interpreted the complaint as relating to protected Title VII activity.  To the contrary, Walden testified at his deposition and again stated in his affidavit that he did not perceive plaintiff's report as a complaint of harassment or discrimination.  (Doc. 47, Ex. B, ¶ 6).  Similarly, plaintiff's affidavit provides that she reported the incident to Walden and Braggs because: "Hoff's comments were inappropriate and made me feel uncomfortable.  I considered Hoff's comments repulsive and violations of Defendant's policies, and I felt a duty to report the incident to management in accordance with Defendant's employment policies."  (Doc.

63, Ex. 2, ¶ 7).   However, the Tenth Circuit has held that an employee's opposition to conduct because it violates the employer's policies by itself does not constitute protected opposition for the purposes of a sexual discrimination claim.   *Petersen*, 301 F.3d at 1188 (finding that plaintiff's report of her supervisor's treatment of an employee "simply because the treatment violated established practices and was unfair to [the employee]," was not enough to show that plaintiff's superiors knew she was "oppos[ing a] practice made an unlawful employment practice by [Title VII]").

Plaintiff has not met her burden to show she is entitled to judgment as a matter of law on her retaliation claim, because she has failed to raise a genuine issue of material fact that her report constitutes protected activity under Title VII, that she had a good-faith belief that Hoff's conduct was discriminatory, and that her supervisors interpreted her report as a complaint of sexual harassment.   Having determined that plaintiff is unable to meet the first element of the prima facie case for retaliation under Title VII, the Court **denies** plaintiff's Motion for Partial Summary Judgment (Doc. 41).

## IV.   Defendant's Motion for Summary Judgment

Defendant argues that its Motion should be granted because plaintiff failed to exhaust her administrative remedies, and also that it is entitled to judgment as a matter of law on all five of plaintiff's claims.   (Doc. 47 at 10).   Each claim is addressed in turn below.

### A.   Failure to Exhaust Administrative Remedies

Defendant argues that plaintiff's claims are barred as to any allegedly unlawful employment practices prior to February 5, 2013, because she failed to timely exhaust her administrative remedies when filing her charge of discrimination with the EEOC.   (Doc. 47 at 11-12).   Plaintiff fails to directly respond to defendant's argument, but states that she submitted a

letter to the EEOC on September 6, 2013, filed a formal charge on November 25, 2013, and was notified of her right to sue on December 11, 2013.   (Doc. 63 at 16).

Title VII requires plaintiffs to file a timely charge of discrimination with the EEOC before filing a federal lawsuit. 42 U.S.C. § 2000e–5(e)(1).   Under the statute, a charge must be filed within 300 days "after the alleged unlawful employment practice occurred." *Id.*   In order to determine whether a plaintiff's filing of an EEOC charge is timely requires "identify[ing] precisely the 'unlawful employment practice' of which he complains." *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210-11 (2010).   The plaintiff has the burden "as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust" her administrative remedies. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

In the context of a Title VII discrimination claim, the Supreme Court has held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.   The charge, therefore, must be filed within the . . . 300–day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.   *Morgan*, 536 U.S. at 114.   The claim generally accrues when the disputed employment practice, such as a demotion, transfer, or firing, is first announced to the plaintiff. *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011).   However, any acts occurring before the 300-day period may only be used as background evidence in support of plaintiff's claim.   *Morgan*, 536 U.S. at 113.

For hostile environment claims, on the other hand, the 300-day requirement "has proven problematic." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005).  This because such claims do not involve discrete acts, but are "composed of a

series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan,* 536 U.S. 101, 117.   Therefore, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122.

Here, plaintiff filed her EEOC charge on November 25, 2013.  Accordingly, on plaintiff's Title VII claims of sexual discrimination, retaliation, and constructive discharge, plaintiff may only rely on alleged discriminatory acts that occurred no earlier than 300 days prior to November 25, 2013, which is January 29, 2013.  Importantly, plaintiff's receipt of a low performance rating on February 5, 2013, her complaints to supervisors on May 22, 2013, and July 15, 2013, and her last day of work, August 5, 2013, all fall within the 300-day timeline.  However, several incidents of harassment that plaintiff alleges she incurred, including the August 2012 Hoff incident, do not fall within the statutory period and are only allowable as background evidence.

As to plaintiff's hostile environment claim, however, the Court may consider acts outside the limitations period, but only if "'the pre- and post-limitations period incidents involve [ ] the same type of employment actions, occur [ ] relatively frequently, and [are] perpetrated by the same managers.'" *Duncan*, 397 F.3d at 1309 (quoting *Morgan,* 536 U.S. at 120).  In evaluating whether the Court may consider acts outside the limitations period, the Court must compare those acts to the acts within the limitations period in terms of "type, frequency, and perpetrator." *Id.*

Plaintiff fails to specify facts in support of her hostile environment claim in both her Complaint and Response.[5]  Nonetheless, based on the record, the Court determines that plaintiff

---

[5] Plaintiff's hostile environment claim, set forth in her Response (Doc. 63 at 41) merely incorporates all of the facts presented in her sexual discrimination section, many of which are not relevant to a claim for hostile environment.

has presented two categories of relevant acts in support of her hostile environment claim that plausibly took place during the filing period: (1) Hoff's conduct toward plaintiff and generally in the workplace, and (2) anonymous conduct directed to plaintiff, such as the lowering of plaintiff's chair, prank telephone calls, missing item from plaintiff's desk, the rearranging of plaintiff's desk, and the placement of a gel ball in plaintiff's drinking cup. Thus, the only acts that occurred prior to the filing period which are relevant is the alleged harassing conduct by Hoff, which plaintiff states began in May 2012. Any conduct plaintiff alleges was perpetrated by any other individuals prior to January 29, 2013 are not part of the same actionable hostile working environment. *See Duncan*, 397 F.3d at 1309.

### B.  Sexual Discrimination

Plaintiff's claim of sexual discrimination under Title VII is premised on her allegation that her decision to "report an incident of sexual harassment to her direct supervisor, Mr. Walden, and direct manager, Mr. Braggs," resulted in her being subjected to discriminatory conduct on the basis of her sex. (Doc. 2 at 3, ¶ 23). Defendant's Motion argues that plaintiff cannot meet her requisite burden under the burden-shifting framework set forth in *McDonnell Douglas*. (Doc. 47 at 12-13).

Where there is no direct evidence of sexual discrimination, a Title VII plaintiff bears the initial burden of establishing the following prima facie case of discrimination: (1) the plaintiff belongs to a protected class; (2) the plaintiff suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *PVNF*, 487 F.3d at 800. If the plaintiff is able to establish a prima facie case of discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action." *Id.* If the employer does so, the burden shifts back to the plaintiff to show that

there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual.[6] *Id.*

First, defendant does not dispute that plaintiff, by virtue of her gender, is a member of a protected class. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination against any individual with respect to sex). As to the second element, plaintiff argues that she suffered the following adverse employment actions at the hands of defendants: (1) her "Below Satisfactory" performance review rating for the 2012 year; (2) coworker and supervisor harassment; (3) defendant failed to promote her or transfer her;[7] and (4) defendant incorrectly informed a third-party verification of employment database that plaintiff was terminated "for cause."

The Tenth Circuit "liberally defines the phrase 'adverse employment action.'" *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). An adverse employment action includes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004). In addition, an employer's action that "significantly harms" the plaintiff's prospects of future employment

---

[6] Plaintiff sought leave of the Court to file a supplemental brief in light of "new, mandatory authority" from the Tenth Circuit in *Walton v. Powell*, 821 F.3d 1204 (10th Cir. 2016). The Court authorized the parties to provide simultaneous supplemental briefing on the issue. Plaintiff's Supplemental Brief (Doc. 100) argues that based on the *Walton* decision, the *McDonnell Douglas* framework is inapplicable to each of her Title VII claims and thus defendant's Motion should be denied in its entirety. To be clear, this is the first time plaintiff has challenged the applicability of the *McDonnell Douglas* framework to this case. Nonetheless, *Walton* does not suggest that *McDonnell Douglas* is inapplicable to plaintiff's Title VII claims. Specifically, the Tenth Circuit in *Walton* remanded the case because it held that the *McDonnell Douglas* framework could not be used in First Amendment retaliation cases. *Walton*, 821 F.3d at 1210. The *Walton* decision therefore has no impact on plaintiff's case, which is premised on Title VII.

[7] Plaintiff's Response refers to multiple incidents beginning in October 2010 that she alleges demonstrate that she was denied promotions. (*See* Doc. 63 at 23-25). However, only one incident occurred during the 300-day time limitation and may support plaintiff's claim: her July 15, 2013 request to be transferred out of the procurement department. (*See id.* at 25).

may constitute an adverse employment action. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1239 (10th Cir. 2004). By contrast, the Tenth Circuit does not consider "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Sanchez*, 164 F.3d at 532.

As an initial matter, plaintiff provides no case law to show that coworker or supervisor harassment constitutes an adverse employment action for the purposes of a sexual discrimination claim, and accordingly the Court cannot determine that the harassment constitutes an adverse employment action.

Moreover, the evidence, viewed in a light most favorable to plaintiff, does not show that her "Below Satisfactory" performance review rating constitutes an adverse employment action. While the review may have negatively impacted her year-end bonus and annual merit base salary adjustment, plaintiff has not provided any evidence to show it caused a "*significant* change in benefits." *See Rumsfeld*, 381 F.3d at 1032-33. Similarly, defendant's denial of plaintiff's request to be transferred out of the procurement department does not rise to the level of an adverse employment action because plaintiff has not provided evidence that she was requesting anything other than a lateral transfer, and the law demonstrates that denial of a lateral transfer does not constitute an adverse employment action. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 n.6 (10th Cir. 1998) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action."). By contrast, the Court finds that plaintiff has provided sufficient evidence for a jury to determine that the Employment Data Report indicating that she was terminated by defendant "for cause" could be an adverse employment action. *See Annett*, 371 F.3d at 1239.

However, even if the Court were to determine that all of plaintiff's allegations did constitute adverse employment actions, plaintiff cannot meet the third element of the prima facie case. To defeat summary judgment on a sexual discrimination claim, the plaintiff must show that defendant took adverse employment actions under circumstances that give rise to an inference of discrimination *based on her sex*. *PVNF*, 487 F.3d at 800 & n.6.

Plaintiff relies on a single piece of evidence in an attempt to satisfy her burden at this stage. (Doc. 63 at 26). Specifically, plaintiff cites an email from Hampton which includes notes of a June 27, 2013 meeting between Miller, Walden, and Hampton to discuss plaintiff's situation in response to her May 22, 2013 allegations of harassment. (Doc. 63, Ex. 27). The email reveals that Walden stated the "[office] drama was attributable to [the] population of women in the group." (*Id.*) However, plaintiff fails to show how a single isolated comment from one of plaintiff's many supervisors, which did not specifically mention her, gives rise to an inference of discriminatory motive for any of the multiple adverse employment actions she alleges she suffered. *See, e.g.*, *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) ("[Sex]-related comments referring directly to the plaintiff can support an inference of [sex] discrimination, but 'isolated [or] ambiguous comments' may be . . . too abstract to support such an inference."); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (isolated, general discriminatory statement that did not mention plaintiff was insufficient to show inference of discrimination). Plaintiff also cannot show that Walden's comment had a nexus to any adverse employment decision; in fact, the e-mail shows that options to accommodate plaintiff's needs, such as moving her to a different pod or increasing separation between her and Hoff, were discussed. *See Voltz v. Coca–Cola Enterprises, Inc.*, 91 F. App'x 63, 72 (10th Cir.

2004) (unpublished) (comment by supervisor that was not made in connection with an adverse employment decision was insufficient to raise an inference of discrimination).

While an inference of discrimination may also be shown by proof that the employer "treated similarly situated employees more favorably," *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005), plaintiff has not presented any evidence that similarly situated male employees were treated more favorably than her.

The Court concludes that a jury would be unable to conclude that plaintiff has produced sufficient evidence of circumstances giving rise to an inference of unlawful discrimination based on her sex.  Accordingly, summary judgment on her sexual discrimination claim is proper.  *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1174 (10th Cir. 2005)  (if the court "concludes that the [third element of the prima facie case] fails as a matter of law, summary judgment for the defendant is the proper result").

### C.  Retaliation

As discussed in section I.A, *supra*, plaintiff's retaliation claim is premised on her allegation that she received a low performance rating because she made a complaint of alleged sexual harassment to Walden and Hampton.

For the same reasons discussed in the Court's assessment of Plaintiff's Motion for Partial Summary Judgment (Doc. 41), even viewing the record in a light most favorable to plaintiff, the Court determines that plaintiff cannot establish a prima facie case of retaliation under Title VII and that defendant is entitled to judgment as a matter of law.

 To reiterate, plaintiff still fails to show a genuine issue of material fact exists as to the first element of the prima facie case—that she engaged in protected opposition to Title VII activity.  *PVNF*, 487 F.3d at 803.  More specifically, plaintiff remains unable to demonstrate that

she had a reasonable, good-faith belief that Hoff's commentary violated title VII because (1) it was a single, isolated incident; (2) plaintiff's supervisors did not perceive plaintiff's report as a complaint of harassment or discrimination; and (3) plaintiff made no mention of sexual harassment or discrimination when she reported the incident. *See Breeden*, 532 U.S. at 1509-10 (reversing district court's order granting summary judgment in plaintiff's favor because "[n]o reasonable person could have believed that the single incident recounted . . . violated Title VII's standard); *Petersen*, 301 F.3d at 1188 (affirming district court's grant of summary judgment to employer where plaintiff failed to mention unlawful discrimination in her complaint and thus her superiors did not know she was engaging in protected opposition).[8]

Even assuming that plaintiff could demonstrate she engaged in protected opposition, defendant argues that plaintiff cannot establish a genuine issue of material fact exists regarding the third element of the prima facie case—causal connection between the materially adverse employment actions and the protected activity. (Doc. 47 at 19-23). The Court agrees.

The Supreme Court recently made clear that the heightened "but for" causation standard applies to Title VII retaliation claims; in other words, an employee must demonstrate that, but for her protected activity, she would not have faced the alleged adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2534 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."); *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014) (clarifying that *Nassar* imposes a "but for" causation standard on the third element of the prima facie case of

---

[8] Plaintiff has also failed to show that the disputed fact—whether she made a report that Hoff told Eichhorst he wanted to see her daughter naked—is material, i.e., that it would change the outcome of Court's decision on her claim.

retaliation).  The Tenth Circuit has also held that a causal connection may "be inferred from the fact that the challenged action closely follows the employee's protected activity."  *PVNF*, 487 F.3d at 804 (one month between protected activity and challenged employment action satisfied causal connection element); *Argo*, 452 F.3d at 1202 (twenty-four days between protected activity and adverse action gave rise to a rebuttable inference of a causal connection).

Here, the evidence fails to show that plaintiff's complaint regarding Hoff's commentary was the "but for" cause of her "Below Satisfactory" performance review rating.  Plaintiff even admits that her low performance rating was only "lowered *in part* because of complaints she made to her superiors about Hoff."  (Doc. 63 at 31).   This is consistent with Walden's affidavit, which demonstrates that plaintiff's performance review rating was based on four considerations other than her complaint regarding Hoff: (1) her unprofessional behavior in demanding a raise in May 2012, (2) Walden's determination that plaintiff's complaint regarding Hoff's conduct in August 2012 was made in bad faith, (3) Walden's determination that plaintiff had made another bad faith complaint regarding a Beaver's behavior during a meeting, which was denied by other employees present; (4) reports from two individuals plaintiff worked with who felt that she had limited knowledge regarding telecommunications and stated they were not satisfied with her contracting skills; and (5) problems with plaintiff's verbal and written communications.  (Doc. 47, Ex. B, ¶¶ 2-6).  It is clear, therefore, that plaintiff cannot meet the but-for test articulated by the Supreme Court.

Likewise, plaintiff cannot show the existence of any temporal proximity to infer the existence of a causal connection.  Plaintiff received her low performance review on February 5, 2013, which is almost six months after she complained to Walden and Braggs about the allegedly

protected activity.  This is significantly longer than the time the Tenth Circuit has held to infer a causal connection.  *See PVNF*, 487 F.3d at 804; *Argo*, 452 F.3d at 1202.

Even construing the record in a light most favorably to plaintiff, she remains unable to satisfy the Supreme Court's "but for" test, and the temporal proximity test adopted in the Tenth Circuit and thus fails to meet the causal connection element.  A reasonable jury would not find that plaintiff had satisfied her burden to make a prima facie case for retaliation.  Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim.

### D.  Hostile Work Environment

Defendant argues that Hoff's conduct cannot support a hostile work environment claim because plaintiff cannot show that it was so severe and pervasive that it altered the conditions or terms of her employment.  (Doc. 47 at 26).  Plaintiff's only argument in response is that her "exhaustive list" of complaints support her claim, and that she notified her doctor that she was experiencing heart palpitations, anxiety, and stress "because of her working environment."  (Doc. 63 at 41-42).

Title VII prohibits an employer from discriminating against an individual because of an individual's sex, and unlawful discrimination may take the form of a hostile work environment. 42 U.S.C. § 2000e–2(a)(1); *Meritor Savings Bank, FSM v. Vinson*, 477 U.S. 57, 65 (1986).  "To establish a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."  *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997), *abrogated on other grounds* in *Eisenhour v. Weber Cty.*, 744 F.3d 1220 (10th Cir. 2014).  Under the fourth

element, the plaintiff must establish under objective and subjective standards that the nature of the alleged sexual harassment was severe and pervasive. *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1023 (10th Cir. 2001). The Supreme Court has provided several non-dispositive factors that district courts should consider to determine if the alleged sexual harassment is severe and pervasive: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with the plaintiff's work performance; and whether the plaintiff suffered any psychological harm. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

In addition to the above elements, the plaintiff must also identify a basis for holding the employer liable under Title VII. *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 168 (10th Cir. 2009) (unpublished). As opposed to instances where the plaintiff's supervisor is the perpetrator of sexual harassment, "the standard for imposing liability on an employer for workplace harassment is heightened where . . . the perpetrators of that harassment were a plaintiff's co-workers." *Benavides v. City of Oklahoma City*, 508 F. App'x 720, 723 (10th Cir. 2013) (unpublished). "An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it." *Burlington Indus., Inc*, 524 U.S. at 759. By contrast, an "employer is absolved of liability for acts of harassment by its employees if it undertakes remedial and preventative action 'reasonably calculated to end the harassment.'" *Duncan*, 397 F.3d at 1310 (quoting *Adler*, 144 F.3d at 676). In assessing a hostile environment claim, courts "should filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of [sex]-related jokes, and occasional teasing." *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005).

As discussed in Section II.A, *supra*, there are two categories of alleged conduct that are admissible under the 300-day time limit.  Each category is addressed in turn.

### 1.  Anonymous actions

Plaintiff alleges that she was subject to prank telephone calls, her desk was rearranged, her chair was lowered for a period of one year, one cup was stolen from her desk, and that a gel ball was placed in her drinking cup.  Defendant argues that plaintiff cannot establish a prima facie case because she offers no evidence that she was subject to this conduct based on her sex. (Doc. 47 at 28).

The Court agrees with defendant that no reasonable jury would find that this conduct occurred because plaintiff is a woman.  Anonymous actions, in particular, are not enough to support a claim of a sexually hostile environment because there is no way to ascertain whether the harassment is based on the plaintiff's sex.  *Duncan*, 397 F.3d at 1314 (rejecting plaintiff's claim that the theft of a job notebook contributed to her hostile environment claim because there was "no evidence" the act was motivated by hostility to her gender).  Accordingly, plaintiff fails to meet the third element of the prima facie case for a hostile environment claim.[9]

### 2.  Hoff's conduct

Defendant seems to only challenge the fourth element of the prima facie case in relation to Hoff's conduct, arguing that plaintiff cannot show that any alleged harassment "altered a term, condition, or privilege of the [her] employment and created an abusive working environment." *Seymore*, 111 F.3d 797.  (Doc. 26-27).

---

[9] The question of defendant's liability as to anonymous conduct also weighs against plaintiff, as the Tenth Circuit "doubts" whether an employer has any obligation to respond to notification of anonymous acts "because it is very difficult for an employer to identify and punish the perpetrators of anonymous acts."  *Duncan*, 397 F.3d at 1312.

Taking all of plaintiff's allegations as true,[10] the following acts were perpetrated by Hoff:

> During her deposition, plaintiff testified that, prior to the August 2012 incident, Hoff made "sexual grunting sounds" around plaintiff, would follow her, and would make comments about her clothing. (Doc. 47, Ex. A, 409:6-412:5). On August 22, 2012, Hoff made the statements about Eichhorst's daughter.  On August 31, 2012, Hoff told plaintiff that she "needed to go" because she was causing him "too much trouble."  (Doc. 63, Ex. 4, 280:11-281:24). On September 13, 2012, plaintiff observed Hoff move his nameplate and place it on top of hers and she overheard him telling a coworker that "he wanted to be on top because he likes being on top."  (Doc. 47, Ex. A, 379:2-13).   Sometime in September 2012, Hoff asked plaintiff to go drinking with him and Sullivan because he "heard [plaintiff] like[d] to drink wine a lot."  (Doc. 47, Ex. A, 381:1-12; Doc. 63, Ex. 1, at EH 236).   On March 5, 2013, Hoff called plaintiff "such a blonde," to which she responded, "I'd rather be a blonde than bald," and noted in her log that "Brian Hoff is bald."  (Doc. 63, Ex. 1, at EH 251).  On April 10, 2013, plaintiff overheard Hoff saying, while on a call for his personal business, that "Bitches up north do not deserve to make $100,000 to $200,000." (Doc. 47, Ex. A, 395:14-15).  On April 11, 2013, Hoff was walking behind plaintiff and stepped on her heels.  (Doc. 63, Ex. 1, at EH 255).  On April 18, 2013, plaintiff overheard Hoff tell someone on the telephone that "women are stupid."  (Doc. 63, Ex. 1, at EH 255).  On June 3, 2013 plaintiff noticed her chair had been lowered and believed that Hoff smiled at her when she sat down. (*Id.* at EH 258).

---

[10] In its Reply, defendant argues that any evidence plaintiff relies on from her "log" (Doc. 63, Ex. A) should be disregarded by the Court because it is inadmissible hearsay.  (Doc. 68 at 6). Plaintiff's log is an exhaustive diary-type document containing plaintiff's subjective beliefs and interpretations of events and interactions with coworkers and supervisors, in addition to select e-mails and chat conversations, from 2008 through 2013.   The Court agrees that plaintiff has offered her log, a series of statements not made while the declarant is testifying at trial, to prove the truth of its contents, which constitutes hearsay under Fed. R. Evid. 801(c).  Courts "are constrained to disregard [ ] hearsay on summary judgment," where "there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule."  *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007).  Because defendant raised the objection in its Reply and plaintiff has not responded, however, the Court declines to disregard the evidence, but notes that the outcome of this case is not impacted, even overlooking the hearsay issue.

There is no question that a jury could find Hoff's conduct toward plaintiff prior to the August 2012 incident to be both objectively and subjectively humiliating and offensive such that it would interfere with plaintiff's ability to work.   However, plaintiff admitted during her deposition that after she reported the Hoff incident to her supervisors in August 2012, "[Hoff] stopped the sexual harassment."[11]   (Doc. 47, Ex. A, 412:9-13).  Thus, defendant cannot be held liable for this conduct because it undertook remedial action that ended the harassment.

Plaintiff fails to create a genuine issue as to whether Hoff's other, post-August-complaint conduct created an abusive working environment under the Supreme Court's non-dispositive factors.  *See Harris*, 510 U.S. at 23.  First, the occurrence of Hoff's allegedly harassing conduct is not frequent enough to rise to the level of pervasive under an objective standard.  During the time period of over one year that plaintiff alleges she was subject to harassment, there was a period of six months—September 2012 through March 2013—where plaintiff provides no

---

[11] Plaintiff argues that this statement refers to the fact that Hoff stopped making inappropriate comments regarding Eichhorst's daughter.  Even viewing the evidence in a light most favorable to plaintiff, her own deposition testimony reflects that this cannot be the case. Plaintiff explicitly stated that, after she complained to Walden and Braggs, Hoff's sexually harassing behavior toward her ended, and the "threatening" behavior began:

> Q: Did it end by the time of that or did it continue after that, the -- the -- walking behind you grunting and umm comments?
> A: No, I -- I -- believe he was still doing it up until about that time.
> Q: Okay.  Did he stop shortly after that incident occurred, that conversation, or did he continue doing it for some period of time?
> A: No, he stopped the sexual harassment after I reported that to Felix--
> Q: Okay.
> A; --about the teenage daughter and switched it over now to where he was threatening me.
> Q: Okay. All right.  So you made the - - of course, **you made the report, Look (sic), he made this inappropriate comment about a minor.  You talked to Felix about that. Evidently, that type of behavior stopped, the moaning, the groaning, which you kind of – and then some other behavior started; is that correct?**
> A: **Yes.**

(Doc. 63, Ex. 4, 412:1-21) (emphasis added).  The Court is only required to accept as true all *reasonable* inferences in the non-movant's favor.

evidence that Hoff harassed or otherwise bothered her.  The Court likewise determines that Hoff's conduct was not objectively severe because it was more akin to teasing, or a "mere offensive utterance," *id.* at 23, than conduct typically supporting a Title VII claim.  *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1028 (10th Cir. 2012) ("A line must be drawn between actionable conduct and conduct that is merely insensitive, tasteless, or vulgar.").  Indeed, in regard to the statement Hoff made about plaintiff liking to drink wine, plaintiff testified at her deposition that she was merely offended that Hoff "was referring to [her] as a drunk" (Doc. 47, Ex. A, 382:3-4).   The Court is particularly persuaded by the fact that plaintiff engaged in the same type of banter with Hoff; when he called her "such a blonde," plaintiff responded with "I'd rather be a blonde than bald."  (Doc. 63, Ex. 1, at EH 251).  This weighs against a finding that plaintiff's workplace was a hostile working environment.  *See MacKenzie*, 414 F.3d at 1281 ("Given the kind of mutual bantering that took place here, we cannot conclude the workplace could be considered either objectively or subjectively hostile.").

Plaintiff's claim is also based on isolated comments that she alleges she overheard Hoff make to other individuals with no reference to her, such as the fact that he liked to "be on top," disparaging comments regarding women being "stupid," about "bitches" not deserving to make $100,000-$200,000, and the alleged comments regarding Eichhorst's daughter.   Under an objective standard, it is unlikely that a reasonable jury would construe these isolated remarks, which made no reference to plaintiff, as severely pervasive enough to unreasonably interfere with plaintiff's performance and create a hostile working environment.  *See Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (stray, isolated "comments fall far short of the 'steady barrage' required for a hostile environment claim"); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1545 (10th Cir. 1995) (noting that the plaintiff failed to "submit any admissible

evidence that [her supervisor] used a gender based vulgarity *in reference to her*" in support of her hostile environment claim (emphasis added)). Indeed, plaintiff has not provided any evidence that her performance at work suffered in any way. While plaintiff provides a medical record showing that she reported that her health was negatively impacted by her working environment, this factor is not dispositive. *See Harris*, 510 U.S. at 23.

While plaintiff may have subjectively felt she was subject to a hostile working environment, the evidence viewed in a light most favorable to plaintiff does not support that the alleged sexual harassment was severe and pervasive under an objective standard. Plaintiff is unable to demonstrate that Hoff's behavior was anything more than unprofessional and of poor taste, but Title VII does not provide a remedy to those who suffer from such conduct.

As a separate basis for denying plaintiff's hostile environment claim, the Court finds that plaintiff has provided insufficient evidence to hold defendant liable for the conduct of its employee under the heightened standard applicable to coworker harassment. Instead, the evidence demonstrates that plaintiff's supervisors quickly took action in response to her complaints. On May 22, 2013, plaintiff emailed Hampton, copying Miller from Human Resources, and complained about issues such as a gel ball placed in her drinking cup, her desk had been rearranged, an item had been stolen from her desk, and her chair had been lowered. (Doc. 47 at 7, ¶¶ 35-36; Doc. 47, Ex. A, Ex. 39). Plaintiff provides evidence of an e-mail exchange of a meeting that took place on June 27, 2013, where possible solutions to assist plaintiff were discussed, such as increasing separation between Hoff and plaintiff, or to "facilitate a move" for plaintiff. (Doc. 63, Ex. 27). The evidence also shows that while Miller was continuing to investigate the issue, plaintiff submitted a complaint to Veevaete, another

individual from defendant's Human Resources department, who also immediately initiated an investigation in response.

The lengthy email plaintiff sent to Veevaete on July 15, 2013 detailed almost every incident plaintiff alleges she was subject to over the past year, and requested an "immediate" transfer from the procurement department.  (Doc. 63, Ex. 9).  Plaintiff's own log includes an email response that same day from John Rossettie, General Manager of Human Resources, acknowledging receipt of her email and informing plaintiff that an investigation was to commence with an investigator from the Employee Relations department.  (Doc. 63, Ex. 1, at EH 266).  The same log shows that plaintiff was in email contact with Ramsey, the investigator assigned to her case as early as July 17, 2013, two days after she filed her complaint.  (*Id.* at EH 268).

Most importantly, based on plaintiff's representation of the facts, it appears that plaintiff's complaints to management in May and July 2013 were the first and second times plaintiff complained about Hoff's sexual harassment toward her specifically, notably the events occurring in May 2012.  (Doc. 63, Ex. 30; Doc. 63, Ex. 9).   In order to impose liability on an employer for failing to remedy a sexually hostile work environment, the "plaintiff must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment."   *Holmes v. Utah, Dep't of Workforce Servs.*, 483 F.3d 1057, 1064 (10th Cir. 2007) (affirming district court's finding that no hostile environment existed where plaintiff never filed a "contemporaneous complaint" with an alleged incident of sexual harassment and thus did not provide timely notice to the employer that would have required a reasonable response).   Here, as soon as Miller was informed of plaintiff's allegations of sexual harassment, she immediately responded and interviewed plaintiff to address

her complaints.  (Doc. 63, Ex. 30).  Similarly, defendant immediately initiated an investigation in response to plaintiff's email to Veevaete.  However, plaintiff abandoned her employment before Ramsey had resolved her complaint.  (*See* Doc. 47, Ex. G, 73:18-21; Doc. 63, Ex. 28).  Plaintiff has provided no evidence that Miller's investigation had concluded when plaintiff left her job. Accordingly, plaintiff has not provided sufficient evidence to show that defendant is liable for Hoff's conduct, particularly in light of the heightened standard for coworker harassment.  *See Duncan*, 397 F.3d at 1310.[12]

Viewing the evidence in a light most favorable to plaintiff, there is no possibility that a rational jury could conclude that any *sexual* harassment that occurred in the workplace was so severe and pervasive that it altered the conditions or terms of plaintiff's employment, nor could it conclude that defendant is liable for any of the alleged sexual harassment.

Therefore, judgment as a matter of law is appropriate for defendant on plaintiff's hostile environment claim.

**E.  Constructive Discharge**

Plaintiff asserts a claim of constructive discharge in violation of Title VII and the Oklahoma Anti-Discrimination Act ("OADA").  The Court addresses each below.

**1.  Constructive discharge under OADA**

---

[12] In a footnote, plaintiff suggests that the "Final Warning" Hoff received on October 18, 2013, after plaintiff left her job with defendant, demonstrates that defendant failed to remedy the hostile work environment.  Specifically, plaintiff states that Hoff received a "Final Warning for violating Defendant's sexual harassment police because he made sexual comments to a female." (Doc. 63 at 42 n.3).  However, the warning only states that Hoff "made inappropriate comments during a call to the help desk," in violation of defendant's Code of Business Ethics.  (Doc. 63, Ex. 35).  Contrary to plaintiff's assertion, this evidence shows that in response to plaintiff's complaints defendant took steps to remedy and prevent Hoff from engaging in harassing conduct.

Plaintiff's OADA claim alleges that her termination was wrongful under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989).  (Doc. 2 at 7, ¶ 63).  Effective November 1, 2011, however, the Oklahoma Legislature amended OADA, Okla. Stat. tit. 25, § 1350, to eliminate the *Burk* tort. *See id.* § 1350(A) ("A cause of action for employment-based discrimination is hereby created and any common law remedies are hereby abolished."); *id.* § 1101(A) (OADA "provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of race, color, national origin, sex, religion, creed, age, disability or genetic information").  Because the OADA amendment was in effect on the date of plaintiff's alleged constructive discharge and on the date she filed this lawsuit, plaintiff is precluded from pursuing her common law claim against defendant.  *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015) (affirming district court's determination that plaintiff could not bring a constructive discharge claim under OADA in light of the amendment explicitly abolishing such claims).  Summary judgment for defendant is proper as to this claim.

### 2.  Constructive discharge under Title VII

With respect to plaintiff's federal constructive discharge claim, any facts occurring prior to January 29, 2013 that plaintiff has alleged in support of this charge may only be used as background information.

"Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir.2004) (quotation omitted).  Tenth Circuit law establishes that the plaintiff has a substantial burden in establishing constructive discharge. *See PVNF*, 487 F.3d at 805; *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) ("The bar is quite high in [constructive discharge]

cases."). The test for constructive discharge is an objective one, "under which neither the employee's subjective views of the situation, nor her employer's subjective intent with regard to discharging her, are relevant." *Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1270 (10th Cir. 2004). An employee's showing that working conditions are merely adverse, difficult, or unpleasant is not sufficient to survive summary judgment. *See Fischer v. Forestwood Co.*, 525 F.3d 972, 981 (10th Cir. 2008); *Tran*, 355 F.3d at 1271. "The question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions." *Tran*, 355 F.3d at 1270.

Plaintiff argues that the facts giving rise to her complaints of sexual harassment, hostile work environment, and retaliation, combined with the fact that the Ramsey denied her request to be transferred to another department, led to her constructive discharge on August 5, 2013. Applying the above principles, however, it is clear that plaintiff cannot meet the high burden required to establish her constructive discharge claim. *See PVNF*, 487 F.3d at 804.

First, and as discussed throughout this opinion, many of the actions plaintiff argues she was subject to were not *illegal* discriminatory acts under Title VII because they were not based upon her sex, and thus cannot support a constructive discharge claim. Second, plaintiff's evidence only demonstrates that her working conditions were difficult and unpleasant—this is not enough to survive summary judgment. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). For example, the Tenth Circuit has found that sexually explicit and derogatory gender-based comments made repeatedly by supervisors to a Title VII plaintiff and other employees did not objectively show that plaintiff had no other choice but to resign employment. *PVNF*, 487 F.3d at 806. Similarly, "some evidence of discriminatory animus in the workplace

will not necessarily establish a constructive discharge claim." *Fischer*, 525 F.3d at 981. Thus, even Hoff's degrading comments about women generally, which were not directed at plaintiff, cannot overcome plaintiff's high burden to establish constructive discharge under an objective standard.

The evidence fails to show that plaintiff was *forced* into a situation that was so intolerable that a reasonable person would feel she had no other choice but to resign. Plaintiff's argument to the contrary focuses on the fact that Ramsey, defendant's internal ethics investigator, denied her request to be transferred to another department. But plaintiff admits that Ramsey offered her two options of working under different supervisors (Doc. 63 at 44), and also provided her with the name of an individual who could "discuss [plaintiff's] letter in more detail." (Doc. 47, Ex. A, 489:1-490:17). A reasonable jury would not find that being presented with alternatives— although perhaps not ideal alternatives—and an offer to receive further assistance regarding her complaint constitutes constructive discharge. *Exum*, 389 F.3d at 1136 (no constructive discharge where the evidence showed that employer provided plaintiff with alternatives and offered to investigate his complaints).

Moreover, plaintiff abandoned her employment with defendant prior to the investigation's completion. (*See* Doc. 47, Ex. G, 73:18-21; Doc. 63, Ex. 28). The evidence shows that plaintiff resigned in protest after her conversation with Ramsey, and this, without more, cannot establish constructive discharge. *Fischer*, 525 F.3d at 982 ("A protest resignation, without more, does not establish constructive discharge.").[13]

---

[13] Moreover, the case cited by plaintiff, *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992), in support of her constructive discharge claim is distinguishable because there, unlike in the present case, the "conduct alleged against [the perpetrators was] so offensive and unacceptable," and the plaintiffs' *supervisors and coworkers* engaged in repeated retributive conduct leading to their constructive discharge. The conduct alleged in this case did not

For the reasons above, plaintiff cannot defeat summary judgment on her federal constructive discharge claim.

## V.       Conclusion

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Partial Summary Judgment and Brief in Support (Doc. 41) is **denied** and defendant's Motion for Summary Judgment and Brief in Support (Doc. 47) is **granted**.  A separate Judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's Motion in Limine and Brief in Support (Doc. 39), defendant's Motion to Exclude the Expert Testimony of Don B. Deselms and Brief in Support (Doc. 40), plaintiff's Objections to Defendant's Deposition Designations (Doc. 85), and defendant's Objection to Plaintiff's Deposition Designations (Doc. 87) are **moot** as a result of the Court's ruling.

SO ORDERED this 13th day of July, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

approach that level, and plaintiff's supervisors made every attempt to investigate and deal with her complaints.